UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| BOUNKET THONGSOPHAPORN, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) Criminal No. 05-26-P-S |
| | ) Civil No.  08-287-P-S |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**RECOMMENDED DECISION ON 28 U.S.C § 2255 MOTION**

Bounket Thongsophaporn has filed a 28 U.S.C. § 2255 motion seeking relief after he was convicted by a jury of four counts charging him with cocaine distribution.  In his direct appeal Thongsophaporn asserted "that the district court erroneously denied his motion to suppress certain statements that he contends were improperly taken after he asserted his post-arrest right to remain silent" and "that the district court erroneously applied a two-level enhancement under the sentencing guidelines for possession of a dangerous weapon."  United States v. Thongsophaporn, 503 F.3d 51, 53 (1st Cir. 2007).   In this 28 U.S.C. § 2255 proceeding Thongsophaporn raises two designated grounds.  The first charges counsel with delivering assistance below the Sixth Amendment requirement and the second focuses on a denial of due process.  The United States has filed a motion for summary dismissal.  Its analysis of Thongsophaporn's claims is succinct and spot-on.  Having thoroughly reviewed the issues presented by Thongsophaporn and the response by the United States, I recommend that the Court deny Thongsophaporn 28 U.S.C. § 2255 relief.

**Discussion**

The First Circuit summarizes the standard for analyzing ineffective assistance claims

stemming from a federal prosecution as follows:

> "The essence of an ineffective-assistance claim is that counsel's unprofessional
> errors so upset the adversarial balance between defense and prosecution that the
> trial was rendered unfair and the verdict rendered suspect." Kimmelman v.
> Morrison, 477 U.S. 365, 374 (1986).  In order to prevail, a defendant must show
> both that counsel's representation fell below an objective standard of
> reasonableness and that there exists a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been different.
> Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  In other words, a
> defendant must demonstrate both seriously-deficient performance on the part of
> his counsel and prejudice resulting therefrom. …
>
> Although the Supreme Court in Strickland discussed the performance prong of
> an ineffectiveness claim before the prejudice prong, the Court made clear that
> "there is no reason for a court deciding an ineffective assistance claim to approach
> the inquiry in the same order or even to address both components of the inquiry if
> the defendant makes an insufficient showing on one." Id. at 697.  As the Court
> noted:  "If it is easier to dispose of an ineffectiveness claim on the ground of lack
> of sufficient prejudice, which we expect will often be so, that course should be
> followed." Id.

United States v. De La Cruz, 514 F.3d 121, 140-41 (1st Cir. 2008).

Three tenets of 28 U.S.C. § 2255 review are relevant to Thongsophaporn's claims.  First:

"Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and

tactics fall 'within the range of reasonable professional assistance,' and courts should avoid

second-guessing counsel's performance with the use of hindsight."  Knight v. Spencer, 447 F.3d

6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689).  Second, "counsel was under no

obligation to raise meritless claims.  Failure to do so does not constitute ineffective assistance of

counsel." Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990).  And, third, "when, as in this

case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's

[criminal proceedings], the judge is at liberty to employ the knowledge gleaned during previous

proceedings and make findings based thereon without convening an additional hearing." <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st Cir. 1993).

1.      **Ineffective Assistance of Counsel – Not Presenting Certain Evidence**

With respect to counsel's performance Thongsophaporn first insists: "Defendant's counsel reviewed evidence provided by the government, but failed to consider Defendant's account of the alleged crime." (Sec. 2255 Mot & Mem. at 16.)   He faults his attorney for failing to call defense witnesses and for not presenting evidence that Thongsophaporn was in another part of the country when some of the charged criminal activity occurred. (<u>Id.</u>) Thongsophaporn maintains that there were witnesses who could have testified that he was in Texas for two weeks and Las Vegas for a couple of days and that he had financial records to substantiate his travels. (<u>Id.</u> at 17.) He relies on the compulsory process clause of the Sixth Amendment, guaranteeing his right to have compulsory process for obtaining witnesses in his favor. (<u>Id.</u> at 17.) Counsel, Thongsophaporn opines, did not sufficiently investigate this key defense concern. (<u>Id.</u> at 18.)

As the United States points out, Thongsophaporn has not provided the court with sufficiently specific information as to who would testify to where he was at what time in Texas and/or Las Vegas.  At this stage of the game, it is essential that Thongsophaporn provide specifics as to how this evidence would have measurably impacted his defense. <u>See</u> <u>David v. United States</u>, 134 F.3d 470, 478 (1st Cir. 1998);  <u>Barrett v. United States</u>, 965 F.2d 1184, 1195 (1st Cir. 1992).  Additionally, there is not a shred of evidence in the record, assuming these witnesses could have been produced, that Thongsophaporn discussed the availability of these witnesses with counsel.  If counsel was not apprised of this avenue of investigation by her client there can be no <u>Strickland</u> performance shortfall as this is not the category of evidence that defense counsel would be expected to discover independent of her client's disclosure.

3

Thongsophaporn was allowed time to reply to the United States' arguments in its § 2255 responsive pleading and has not done so.  Accordingly, there is no basis on this record to further consider providing Thongsophaporn with collateral relief on this ground.

**2.      Ineffective Assistance of Counsel – Not Arguing the Audio Tapes were Inadmissible under Federal Rule of Evidence 403**

A second complaint Thongsophaporn has with his attorney's performance relates to the admissibility of inaudible portions of incriminating tapes under Federal Rule of Evidence 403. This rule provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.[1]

"At defendant's trial," Thongsophaporn explains, "tapes of his confession (which were not very audible) were presented as evidence.  On the first day of trial, the court held an informal discussion, without the jury present, on the admissibility of said tapes.  The court permitted the tapes into evidence."  (Sec. 2255 Mot. & Mem. at 18.)  In Thongsophaporn's view, his attorney should have requested an evidentiary hearing pursuant to Federal Rule of Evidence 403 arguing that there was an unfair prejudicial effect in the admission of the tapes.  He points out that there were government witnesses who could have testified to his confession and to his sales of drugs. (Id.)[2]

Again, the United States rings the bell in its response to this argument. (See Mot. Summ. Dismissal at 19-21.)  Defense counsel did make strong, although un-prevailing, arguments for

---

[1]      Thongsophaporn actually cites to Federal Rule of Criminal Procedure 403 but undoubtedly he means this rule of evidence.
[2]      This is an unusual twist in that usually defendants would object to such second-hand descriptions on hearsay grounds.

suppression on constitutional grounds before the magistrate judge that were premised on violations of his non-self-incrimination rights.  See United States v. Thongsophaporn, Crim. No. 05-26-P-S, 2005 WL 2372745, 2005 U.S. Dist. Lexis 17096 (D. Me. Aug. 16, 2005) (Mag. J. Cohen, Rec. Dec. on Mot. to Dismiss), aff'd, 2005 WL 2372745, 2005 U.S. Dist. Lexis 22924 (D. Me. Sep. 26, 2005), aff'd, 503 F.3d 51, 53 (1st Cir. 2007), cert. denied, 128 S. Ct. 1294 (Feb. 19, 2008).   With regard to the tenability of a Federal Rule of Evidence 403 argument based on undue prejudice, Thongsophaporn makes the too common mistake of believing that evidence can be excluded as prejudicial on the grounds of the extent of prejudice to the defense alone.  "That the evidence helped the prosecution and hurt the defendant's chances cannot be gainsaid - but that did not require exclusion. By design, all evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided."  United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989).  And, in terms of defense counsel's performance, it must be stressed that she was able to persuade the court to suppress evidence of the firearm at trial.

**3.     Ineffective Assistance of Counsel and Denial of Due Process apropos the Gun Enhancement**

      Thongsophaporn's final complaint concerning his attorney's performance—part three of his first 28 U.S.C. § 2255 ground—is that she should have made some sort of plain-view doctrine argument at sentencing to advocate against the gun enhancement.  (Sec. 2255 Mot. & Mem. at 19.)  He explains that the gun in question was found during a warrantless search of his apartment but the gun was not in plain view and it was not admitted into evidence at trial.  His argument, which takes some bearing with, proceeds as follows:

      In the instant case, if the government were to successfully argue that they had a valid search warrant, the gun could not be positively connected to Defendant's crime.  The gun was not registered to Defendant, did not have Defendant's

fingerprints, was not found in the part of the house Defendant occupied and Defendant was not aware of the gun's existence.

In spite of U.S.S.G. stating the government needs to show, by preponderance of the evidence, that Defendant had constructive possession of the gun; the U.S. Supreme Court, in Apprendi v. New Jersey, 530 U.S. 466 …[(2000)], held that sentencing enhancements need to be proven in trial or admitted by the defendant.

(Sec. 2255 Mot. & Mem. at 19.)

This complaint with his attorney is expressly tied to the content of Thongsophaporn's second and final 28 U.S.C. § 2255 ground which he describes as a due process claim. Thongsophaporn explains: "Defendant Thongsophaporn's due process of [l]aw was violated when he received an unreasonable prison term which included an unwarranted enhancement for constructive possession of a gun.  Said constitutional violation may be consolidated with argument one (ineffective assistance of counsel) in this motion."  (Id. at 22.)  With regard to the due process theory behind this ground Thongsophaporn reasons:  "Liberty means Freedom.  In the case at bar, Defendant lost his freedom when he was detained.  Subsequent to Defendant's guilty verdict by a 12 person jury and his unreasonable sentence, his freedom was further deprived.  Defendant's liberty was exacerbated by an unwarranted enhancement for constructive possession of a firearm."  (Id. at 20.)  Thongsophaporn directs the Court's attention to Gall v. United States, __ U.S. __, 128 S. Ct. 586 (2007), and Kimbrough v. United States, __ U.S. __, 128 S. Ct. 558 (2007).  He asserts:

In the case at bar, at sentencing hearing, defense counsel failed; counselor did not adequately defend against the gun enhancement and the prison term for illegal drug offenses.  The Defendant was a first time offender, did not have violence in his crime, was gainfully employed, and was caring for his family.  Other than his drug dealing, the Defendant was an asset to his community.

Considering the trial judge did not allow the gun into evidence, that the government had no proof that the gun belonged to the Defendant, the government

did not prove that the gun was used in Defendant's crime, and the Defendant did not admit using the gun; Defense counsel failed to negate the gun enhancement.

(Sec. 2255 Mot & Mem. at 20-21.)

The First Circuit already addressed Thongsophaporn's challenge to this Court's gun enhancement:

The sentencing guidelines provide for a two-level enhancement in drug offenses when a defendant possesses a dangerous weapon, including a firearm. U.S.S.G. § 2D1.1(b)(1). According to the commentary, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1) comment n. 3.

The guidelines thus require the establishment of a "certain nexus" between the weapon and the offense for the enhancement to apply. United States v. Lagasse, 87 F.3d 18, 22 (1st Cir.1996). To do so, "the prosecution need only prove that the defendant possessed the weapon during the currency of the offense, not necessarily that he actually used it in perpetrating the crime or that he intended to do so." [United States v. ] McDonald, 121 F.3d 7, 10 (1st Cir.1997). Thus, "when the weapon's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapons to the offense conduct." United States v. Corcimiglia, 967 F.2d 724, 727 (1st Cir.1992); accord McDonald, 121 F.3d at 10; Lagasse, 87 F.3d at 22; United States v. Ovalle-Marquez, 36 F.3d 212, 225 (1st Cir.1994).

The sentencing enhancement also applies whenever a co-defendant's possession of a firearm in furtherance of a joint-criminal venture is "reasonably foreseeable." United States v. Bianco, 922 F.2d 910 (1st Cir.1991). Because firearms are considered "common tools of the drug trade," a co-defendant's possession of a dangerous weapon "is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." Id.

Here, the district court concluded that the guns found in the rear bedroom belonged to Addi, that Addi was a member of a drug conspiracy with the defendant, and that Addi's possession of the guns was reasonably foreseeable to the defendant. The evidence as to the latter two points was the following: (1) defendant's home was the center of drug activity; (2) Addi lived in the rear bedroom of the home; (3) defendant knew that Addi had guns; (4) one of defendant's drug customers met the person depicted in the lineup photograph and gave him money at defendant's request; and (5) the person in the photograph was Addi.

7

At the trial, there was no evidence as to the identity of the person in the lineup photograph.  At the sentencing, however, the government introduced the photograph and the relevant trial transcript, both times stating on the record that the person depicted in the photograph was Addi.  Counsel for defendant did not object to the admission of the evidence or to the government's representation, or indeed argue to the court that the person in the photograph was not Addi.  Under the circumstances, the district court appropriately credited the government's representation, and concluded that Addi was involved in defendant's drug trafficking activities.

The question, then, is whether the district court properly inferred a nexus between the presence of the guns in the house and the drug trafficking operation. A sentencing court may make reasonable inferences from the facts in evidence as long as "a rational connection" exists "between the facts proved and the fact presumed."  Bianco, 922 F.2d at 912.  While the evidence of a drug conspiracy between defendant and Addi is not overwhelming, the necessary "rational connection" exists here.  See, e.g., Corcimiglia, 967 F.2d at 727;  McDonald, 121 F.3d at 10.  Indeed, this court has held that the "mere presence of a firearm in the same residence which is used as a site for drug transactions *may* allow a sentencing court to make the inference that the weapon was present for the protection of the drug operation."  Corcimiglia, 967 F.2d at 727.

Accordingly, the application of the two-level enhancement for possession of a dangerous weapon was not clearly erroneous[.]

Thongsophaporn, 503 F.3d at 58-59 (footnotes omitted).  In one footnote the Panel noted:  "In fact, defense counsel assumed that fact to be true, arguing that there was no evidence that Addi and defendant were co-conspirators 'other than [Gargan's] statement that she had given him-she had met and given him money.'"  Id. at 59 n.10.

In the appendix to his 28 U.S.C.§ 2255 memorandum, Thongsophaporn attaches a brief summary of the law, relying on Ninth Circuit cases, while acknowledging that the single First Circuit case he cites is against him.

This Court clearly addressed the issue of attributing the gun to Thongsophaporn during the sentencing hearing.  This was thanks in great part to defense counsel's advocacy.  Without

8

rehashing the whole discussion which certainly dominated the hearing, counsel summarized the

defense position as follows:

> I'm arguing that A, he didn't know there were guns in the house, and B, that it was
> not reasonably foreseeable to the defendant based on these facts that Addi used or
> possessed firearms in connection with Addi's commission of acts in furtherance of
> a jointly undertaken activity.  That the facts offered by the Government are not
> enough to support an enhancement based on the -- based on the argument either
> that the guns were in the house and therefore my client is responsible for them, or
> that at some point, the codefendant -- Addi, who possessed the firearm, there has
> to be a connection and there has to be some connection to my client, either by
> actual knowledge or based on the argument that it's foreseeable, and I'm arguing
> in this particular case, he neither -- he has neither actual knowledge nor is it
> foreseeable to him that Addi  would possess weapons in connection with an act
> committed in furtherance of a jointly undertaken activity.

(Sentencing Tr. at 30-31.)

> The Court came down on the other side:

> I find the enhancement applies and I'll tell you -- and as a basis, I go back to
> my earlier chain I elucidated after the Government's position, I think it applies.

> The defendant knew that Addi, within a reasonable timeframe, had a gun.
> Addi was being used to collect drug money.  I find that the defendant was using
> Addi as a collection agent.  I find that there was a co-conspiracy no doubt going
> on.  That the defendant was letting Addi stay at his house with the knowledge that
> Addi had guns.  That those were Addi's guns in the bedroom.  That the defendant
> surmised in his own mind, and that in my view it's reasonably foreseeable that the
> Government -- that the defendant knew that Addi was keeping guns in the
> bedroom because Addi had a gun to the defendant's own knowledge and that, in
> fact, when the police came, he said there are no guns in my bedroom.  If they are
> present at all, they are in Addi's bedroom.

> It's clear as a bell to me that that's Addi's guns that he already knew about and
> he thought if Addi had left them, that's where Addi would have left them.  And
> the guns, in fact, are tools of the trade in drug dealing, used to protect drugs, the
> money, protect the drugs and drug dealers.  In this case, I find that the
> Government has shown that one of the defendant's co-conspirators possessed a
> weapon during the offense.  It was reasonably foreseeable to the defendant that
> that would happen, and the defendant has failed to meet its burden to show the
> connection between the drug crime and the gun was clearly improbable, so the
> enhancement applies.

(Id. at 31-32.)

The trial court made a factual determination that was adverse to the defendant.  However, defendant's counsel advocated against the factual finding and attempted to dissuade the judge. The representation was not ineffective in the constitutional sense, although it did not bring the result Thongsophaporn desired.

## Conclusion

Based upon the foregoing I recommend that the Government's request for summary dismissal be granted and the motion to vacate be denied.  I further recommend that a certificate of appealability should not issue in the event Thongsophaporn files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

January 15, 2009.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge